**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| DIANE BENNETT, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>ORBITZ WORLDWIDE, INC.; EXPEDIA, INC.; HOTELS.COM LP; TRAVELOCITY.COM LP; PRICELINE.COM INCORPORATED; BOOKING.COM B.V.; BOOKING.COM (USA), INC.; SABRE HOLDINGS CORPORATION; TRUMP INTERNATIONAL HOTELS MANAGEMENT, LLC; KIMPTON HOTEL & RESTAURANT GROUP, LLC; INTERCONTINENTAL HOTELS GROUP RESOURCES, INC.; HILTON WORLDWIDE, INC.; STARWOOD HOTELS & RESORTS WORLDWIDE INC.; MARRIOTT INTERNATIONAL, INC.; and, JANE DOES 1-100,<br><br>        Defendants. | Civil Action No. _____<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff, Diane Bennett (hereinafter "Bennett"), by and through her attorneys, on behalf of herself and all others similarly situated, brings this Class Action Complaint against Orbitz Worldwide, Inc. ("Orbitz"), Expedia, Inc. ("Expedia"), Hotels.com LP ("Hotels.com"), Travelocity.com LP ("Travelocity"), Priceline.com, Inc. ("Priceline"), Booking.com B.V., Booking.com (USA), Inc. ("Booking.com") and Sabre Holdings Corporation ("Sabre Holdings") (collectively, "the Online Travel Retailer Defendants") and Trump International Hotels

Management, LLC, ("Trump"), Kimpton Hotel & Restaurant Group, LLC ("Kimpton"), InterContinental Hotels Group Resources Inc. ("InterContinental"), Hilton Worldwide, Inc. ("Hilton"); Starwood Hotels & Resorts Worldwide, Inc. ("Starwood"), and Marriott International, Inc. ("Marriott"); (collectively, "Hotel Defendants") and alleges, based upon personal knowledge as to himself and his own acts, and as to all other matters based upon the investigation of counsel and upon information and belief, as follows:

## NATURE OF CLAIM

1.      During the class period, Plaintiff purchased hotel room reservations online directly from one or more of the Online Travel Retailer Defendants in the United States. Plaintiff brings this direct purchaser antitrust action to challenge the Online Travel Retailer Defendants' conspiracy with the Hotel Defendants to enter into, fix, raise, stabilize, maintain and/or enforce minimum price maintenance ("PM") agreements. Plaintiff seeks damages and equitable relief from Defendants for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and under Sections 4 and 16 of the Clayton Act, 15 U.S.C. § 15(a) and 26.

2.      The Online Travel Retailer Defendants dominate and control the market for Hotel Reservations in the State of Texas and throughout the United States. The Online Travel Retailer Defendants conspired with the Hotel Defendants and unlawfully agreed to impose a PM scheme that would fix and maintain the retail price for hotel room reservations based upon a fixed structure and retail price for room reservations (hereinafter "Rack Rates" or "Rack-Rate Structure"). The Defendants agreed to restrict and restrain competition for hotel room reservations pursuant to Defendants' Travel Retailer-Hotel Agreements in the market for online reservations. Throughout the class period Defendants have used Travel Retailer-Hotel Agreements to set, fix, and maintain minimum prices at the Rack Rates.  The Agreements

between the Online Travel Retailers and Hotel Defendants provides that room reservations will not be sold to Plaintiff and members of the Class for less than the Rack Rate. The Agreements restrain price competition by requiring the Hotel Defendants to set and also enforce minimum price maintenance agreements with respect to attempted price-cutting by competing Online Travel Retailers, and/or to prevent price-cutting and discounting of room reservations and to prevent any party from engaging in conduct which would result in the profit-lowering effects of retail price competition for hotel room reservations.

3.      Pursuant to the Defendants' Travel Retailer-Hotel Agreements, the Hotel Defendants agreed to and did in fact enforce the PM scheme against any Online Travel Retailers that competed or attempted to compete with the named Online Travel Retailer Defendants with respect to price. Further, the Defendants were part of an anti-competitive scheme pursuant to which the Online Travel Retailer Defendants utilized their substantial market power and dominance to unlawfully conspire with the Hotel Defendants to, *inter alia,* impose and implement minimum resale price maintenance agreements; enforce the Agreements; refuse to supply or cut off supply to competing price-cutting Online Travel Retailers; and otherwise engage in the other anticompetitive conduct specified herein; all in violation of Section 1 of the Sherman Act, Sections 4 and 16 of the Clayton Act and Texas law.

4.      Each of the Defendants has conspired and colluded by engaging in extreme measures to ensure that the room rates will be the same or constant for the same product in all online distribution channels. The Defendants set a price point and created a base floor below which Defendants could not sell hotel rooms.

5.      As a result of the concerted PM scheme designated and implemented by the Defendants, room reservations were not to be sold to Plaintiff and members of the Class for less

than the Rack Rate. The Defendants agreed not to compete with any of the other Online Travel Retailer Defendants on price, and the retail rates for hotel room reservations were set at the Rack Rates. The Agreements are the product of a centralized conspiracy resulting in Plaintiff and Class members paying artificially inflated prices for hotel rooms.

6.      Moreover, the Online Travel Retailer Defendants' advertised "best price guarantees" are nothing more than an illusion for their conspiracy to fix prices, such that the Online Travel Retailer Defendants do not have to compete on price but can offer the "best price" to their customers knowing that all of the Online Travel Retailer Defendants will offer the *same* anti-competitive fixed price. Accordingly, in reality, there is no "so-called" "best price" but instead there is an unlawful fixed artificially inflated uniform price and price structure.

*7.*      Absent Defendants' anti-competitive and deceptive conduct, Plaintiff and the other Class members would have paid less for each of the room reservations purchased during the Class Period.  The direct consequence of Defendants' unlawful conduct was that Plaintiff and other Class members paid overcharges on their purchases of room reservations throughout the Class Period.  Plaintiff thus seeks damages and equitable relief under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26, and for violations of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, as well as for violations of state consumer protection laws and unjust enrichment.

8.      As a result of Defendants' unlawful conspiracy, Plaintiff and the proposed Class paid artificially-inflated prices for hotel rooms throughout the Class Period and sustained related damages arising from their inability to purchase rooms in a free and open market based upon lawful competition. Accordingly, Plaintiff and Class members have paid supra-competitive prices.

## PARTIES

9.      Plaintiff Diane Bennett is a resident and citizen of San Antonia, Texas.  During the Class Period, Ms. Bennett purchased a room at the Hampton Inn and Suites Dumas in Dumas, Texas through Priceline.com.  Ms. Bennett paid artificially inflated prices due to the conspiracy and has been damaged by the conduct alleged herein.

10.      Defendant Hotels.com LP is an affiliate of Expedia. Hotels.com LP is a Texas limited partnership with its headquarters located at 10440 North Central Expressway, Suite 400, Dallas, Texas 75231. All operations are centralized from the Dallas-based corporate office.

11.      Defendant Travelocity.com LP is a Delaware limited partnership with its principal place of business and corporate headquarters located at 3150 Sabre Drive, Southlake, Texas 76092. Travelocity is owned by Texas-based Sabre Holding Corporation. Travelocity is a leading provider of consumer-direct travel services.

12.      Defendant Sabre Holding Corporation, incorporated in Delaware, has its worldwide headquarters at 3150 Sabre Drive, Southlake, Texas 76092, from which its operations and this scheme were centralized.

13.      Defendant Expedia, Inc. is a Delaware corporation with its principal place of business at 333 108th Avenue NE, Bellevue, Washington 98004, and conducts substantial business in the State of Texas.

14.      Defendant Booking.com B.V. is a company based in Amsterdam, the Netherlands, with its principal place of business at Herengracht 597, 1017 CE, Amsterdam, Netherlands. It also maintains a U.S. office at 801 Travis Street, Suite 1625, Houston, Texas, It owns and operates Booking.com, the leading worldwide online Room Reservations agency by room nights sold, attracting over 30 million unique visitors each month via the Internet from both

leisure and business markets worldwide. Booking.com B.V. is a wholly owned subsidiary of Priceline.com Incorporated. Booking.com conducts substantial business in the State of Texas.

15.    Defendant Booking.com (USA), Inc. is a Delaware corporation with a place of business located at 801 Travis Street, Suite 1625, Houston, Texas. Booking.com (USA), Inc. is a wholly owned subsidiary of Priceline.com Incorporated.

16.    Defendant Priceline.com Incorporated is a Delaware corporation with its primary place of business located at 800 Connecticut Avenue, Norwalk, Connecticut 06854. It also maintains an office in San Jose in the State of Texas, and conducts substantial business in the State of Texas.

17.    Defendant Orbitz Worldwide, Inc. is a Delaware corporation and its corporate headquarters are located at 500 W. Madison Street, Suite 1000, Chicago, Illinois 60661. It conducts substantial business in the State of Texas.

18.    Defendant Intercontinental Hotels Group Resources, Inc. is a Delaware corporation with its primary place of business located at 3 Ravinia Drive, Suite 100, Atlanta, Georgia 30346-2149. It conducts substantial business in the State of Texas.

19.    Defendant Starwood Hotels & Resorts Worldwide, Inc. is a Maryland corporation with its principal place of business at One StarPoint, Stamford, Connecticut 06902. Starwood's hotels are primarily operated under the brand names St. Regis®, The Luxury Collection®, Sheraton®, Westin®, W®, Le Meridien®, Four Points® by Sheraton, Aloft® and Element®. It conducts substantial business in the State of Texas.

20.    Defendant Marriott International, Inc. is a Delaware corporation with its principal place of business at 10400 Fernwood Road, Bethesda, Maryland 20817-1102. It conducts substantial business in the State of Texas.

21.     Defendant Trump International Hotels Management, LLC, doing business as The Trump Hotel Collection, is a Delaware limited liability company headquartered at 725 Fifth Avenue, New York, New York 10022. It conducts substantial business in the State of Texas.

22.     Defendant Hilton Worldwide, Inc. is a Delaware company doing business as Hilton Hotels & Resorts with its primary place of business located at 7930 Jones Branch Drive, McLean, Virginia. It conducts substantial business in the State of Texas.

23.     Defendant Kimpton Hotel & Restaurant Group, LLC is a Delaware limited liability company with its principal place of business located at 222 Kearny Street, Suite 200, San Francisco, CA 94108. It conducts substantial business in the State of Texas.

## UNNAMED CO-CONSPIRATORS

24.     Various other persons, firms and corporations, not named herein as Defendants have participated as co-conspirators with the Defendants in the acts complained of and have performed acts and made statements in furtherance of the conspiracy and unlawful conduct described herein. Some of these firms are as yet unidentified.

25.     In addition, the acts alleged against the Defendants in this Complaint were authorized, committed, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of Defendants' businesses or affairs.

26.     Each Defendant acted as the principal, agent, or joint venturer of, or for, other Defendants with respect to the acts, violations, and common course of conduct alleged by Plaintiff.

27.     Whenever this Complaint refers to an act, deed or transaction of a corporation or entity, the Complaint is alleging that the corporation or entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they

were actively engaged in the management, direction, control or transaction of the corporation or entity's business or affairs.

## JURISDICTION AND VENUE

28.     This action arises under Section 1 of the Sherman Act and pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a), and 26, and 28 U.S.C. §§ 1331 and 1337.

29.     Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b) and (c), in that at least one or more of the Defendants reside in this judicial district and/or are licensed to do business or are doing business in this judicial district.

30.     Venue is also proper in this District since many of the Defendants reside, transact business, are found, or have agents in this District.  Further, a substantial part of the events or occurrences giving rise to the claims alleged occurred in the District.

## FACTUAL ALLEGATIONS

31.     During the Class Period, from January 1, 2005 through the present date, the internet travel industry has seen explosive growth.  Estimates indicate that between one-third and one-half of all hotel bookings in the United States are made online, many through internet travel companies owned by the Online Travel Retailer Defendants.

32.     Through their web sites, the Online Travel Retailer Defendants solicit and allow consumers to rent hotel rooms in many different hotels throughout the country and the world. These companies offer their services to Hotel Defendants and consumers through a pre-set uniform structure consisting of common business models.

33.     Online Travel Retailers charge a "service fee" to hotel operators on a transaction basis for booking customers into rooms at a given hotel when the class member pays the hotel for the room directly. If open and free competition existed, the hotels should be setting and the

Online Travel Retailers should be requiring a competitive price for Room Reservations to increase business and compete against other Online Travel Retailers offering the same service.

34.     Online Travel Retailers also operate by first purchasing and taking title to inventories of hotel rooms at negotiated rates from the Hotel Defendants ("wholesale" rates); and then re-selling the rooms to consumers at higher retail rates keeping the difference as profit. Contrary to lawful competitive practices, the Online Travel Retailers are not competing on price.

35.     The Online Travel Retailer Defendants have gained a dominant presence in the online sale of Room Reservations. The Online Travel Retailer Defendants now hold more than a 50 percent market share in the internet travel business market. The Online Travel Retailer Defendants have become increasingly important to the Hotel Defendants' business by generating as much as one-half of the Hotel Defendants' Room Reservation traffic. Accordingly, the Hotel Defendants believe that they need access to the Online Travel Retailer Defendants' distribution network.

36.     As a result of their dominance, and knowing that the Hotel Defendants cannot afford to lose access to their distribution network, the Online Travel Retailer Defendants devised an illegal PM scheme to prevent new or more efficient internet retailers and other parties from competing and lowering room rates. They exacted agreements from the Hotel Defendants that desired to sell room reservations through the Online Travel Retailer Defendants which even imposed a penalty of termination as a condition of doing business with other competing Online Travel Retailers such that the Defendants were able to ensure that competing Online Travel Retailers refrained from discounting prices below the Rack Rate.

37.     The Defendant Travel Retailer-Hotel Agreements are and were part of an overall conspiracy and agreement to impose and enforce the PM scheme. During the Class Period,

Defendants unlawfully used the mails and wires to implement and enforce their conspiracy. In addition, Defendants met in numerous locations, including in the State of Texas, and in Las Vegas, Nevada to coordinate rate pricing in the State of Texas and set their strategies to implement their unlawful scheme throughout the United States.

38.     The Defendants and their authorized agents have implemented their conspiracy through the extensive use of interstate mails and wires. They have also convened in Texas and throughout the United States in meetings and conferences to implement their scheme. Defendants have implemented their scheme at Eye for Travel's Travel Distribution North America Summits, a leading strategic and networking forum for Senior Online Travel and Hospitality executives at which Defendants continued to set, plan, fix, and maintain the agreed upon conspiracy.

39.     Each of the Defendants has used the mails, wires and sophisticated automated internet strategies to ensure and enforce the agreement that hotel room rates have the same rate structure across all of their distribution channels.

40.     The Defendants enforce their lowest rate guarantees through tough tactics and unlawful activities for hotels found to be in violation of the conspiracy.

41.     Throughout the Class Period, Defendants have engaged in and managed internet web sites through the use of various central databases and automated software systems which allowed all vendors and Online Travel Retailers to communicate in real time. These automated systems provide the Defendants the ability to monitor and enforce its' anticompetitive practices and to simultaneously update rates, allotments, inventory restrictions, cut-off dates, and blackout dates. Through the use of these sophisticated software tools, they can set, fix, maintain, and enforce the conspiracy in real-time.

42.     The Hotel Defendants and Online Travel Retailer Defendants have gone to extraordinary lengths to enforce their secret system, whereby rooms are sold for identical prices by different agents and hotels.

43.     The system is policed by the Defendants, who report any competitors selling rooms at below the Rack Rate. Any attempt to discount is met with fierce sanctions. An email to a website from a senior executive at Radisson shows how hotels try to enforce the scheme so that all distribution channels offer the same price.

> "Please REMOVE all Radisson Hotel product from your site as you are causing US online rate parity issues. We offer a best online rate guarantee. . .same room type should be same price across all online distribution."
> wrote Gail Jordan, a sales director at Radisson.

44.     In another email to an attempt to discount by a hotel, an executive at Starwood, which runs Le Meridien, Westin and Sheraton hotels, said:

> "Should a wholesaler decide to sell the rooms on a room only basis, he has to make sure that the per contract agreed minimum mark-up is guaranteed."

45.     Essential to the enforcement of the Defendants' conspiracy, and as part of the Defendant Retailer-Hotel Agreements, the Hotel Defendants demonstrated their compliance by requiring that competing Online Travel Retailers agree to raise and maintain retail prices at the Rack Rate. As a further sign of their agreement with the Online Travel Retailer Defendants, in some instances, the Hotel Defendants threatened competing Online Travel Retailers with legal action and/or refused to allow competing Online Travel Retailers, such as Skoosh.com, to sell room reservations if the Online Travel Retailers refused to price fix and maintain resale prices at the Rack Rate in compliance with the PM scheme. Further, pursuant to their agreement with the Online Travel Retailer Defendants, in some instances, the Hotel Defendants required the

wholesalers to stop providing rooms to price-cutting Online Travel Retailers, such as Skoosh.com, if they refused to price fix and maintain resale prices at the Rack Rate.

46.     Skoosh, a small online travel agent, published a letter dated August 31, 2010, from its CEO to an Online Travel Retailer Defendant and Skoosh's competitor Booking.com, complaining about Booking.com's enforcement of the Defendant Retailer-Hotel Agreements.

47.     Dorian Harris, Director of Skoosh.com, an entity which tried to engage in price competition, was met with disaster. According to Dorian Harris, when Skoosh, an online travel agent, began to compete on hotel rates the industry started to move against it. Some of the world's major hotel chains wrote to Skoosh directly demanding that Skoosh either raise its rates to the same as other hotels and its other distribution partners (calling the practice 'rate parity'). They also threatened removal of all hotels entirely from the Skoosh site.

48.     When Skoosh did not comply, the hotel chains went to their wholesale suppliers and pressured them to disconnect their properties from Skoosh. Skoosh's main U.S. supplier complied and Skoosh's account was shutoff.

49.     An article dated April 26, 2011 from tnooz.com revealed:

"The UK's Office of Fair Trading, a government regulatory body which examines business practice and its effect on consumers and industry, is currently investigating complaints triggered in part by hotel booking firm Skoosh in September 2010 over hotel room pricing on travel websites.

"Rate parity" is frowned upon by many as it restricts the ability to differentiate a product based on price. Others simply call it "price fixing".

A series of emails obtained by Tnooz have now shed further light on the issue, with some hoteliers confused about where they stand on the law and others seemingly just trying to protect their relationship with large online travel agency partners.

Here, one Florida-based hotelier acknowledges that "rate parity" is <u>far more prevalent in the US than in Europe</u>, when asked to explain why the distributor is being told to set a room rate:

"…if we do not maintain parity with all, we are threatened with poor placement on sites and worst case removal of hotel from sales sites. That is the way the OTAs operate in [the] USA.

"[Company A] threatens [us] if [Company B] gets lower rates and vice-versa. It is a vicious cycle if we pull out of parity. I think the model in Europe is built to operate more competitively but that is not the model here (much as I wish it was the same in Europe!)."

Another exchange illustrates the issue further, this time between a Spanish hotel and fellow European distributor (starting with a message from the hotelier).

<u>Hotelier:</u>

"Dear partner, we would appreciate information on where to get the sales prices they [you] post as they were incorrect. As you can see, are selling cheaper than our own website for what they are in breach of obligation to price parity."

<u>Distributor:</u>

"Just to understand, do you want everyone to fix the prices and sell your hotel at exactly the same rate?"

<u>Hotelier:</u>

"Yes I do. But in order to get it I would need to know from where are you taking prices in order to request them to fix their prices. Could you help me please?"

The pair then discuss the ongoing OFT investigation, with the distributor warning the hotelier that regulators are investigating such practices. The exchange continues:

<u>Distributor:</u>

"If you choose to break the law that's of course entirely your decision. We will not assist in this matter."

<u>Hotelier:</u>

"My apologize but I dont understand what do you mean by 'breaking the law'. What it is suppose that I have done? It is not me who is breaking the rate parity."

<u>Distributor:</u>

"Price fixing is illegal. 'Rate parity' may well be part of the hotel industry but that doesn't make it legal and, as I have explained, it is now being investigated by the

authorities. Many hotel chains have been approached already. I strongly suggest you seek legal advice before proceeding any further but, again, that's entirely your decision."

Hotelier:

"Thanks very much for your help but I am lost. Fix pricing is illegal? I mean, to have rate parity is illegal? It is the first time I listen that."

50.     The fact that Booking.com has threatened to cut off the sale of room reservations for Hotel Defendants that do not enforce the PM scheme is entirely consistent with the Rate Assured Hotel Program implemented by Booking.com's parent, Texas-based Defendant Sabre (which also owns Defendant and Texas-based Travelocity). Sabre's Rate Assured Hotel Program requires the Hotel Defendants to enforce the PM scheme.

51.     In fact, Texas-based Sabre, which owns Travelocity and Booking .com, also runs a division in the State of Texas called "Sabre Hospitality Solutions," which expressly markets and encourages hotels to adopt rate parity throughout the United States, in effect, the PM scheme. *See, e.g.,* http://www.sabrehospitality.com/blog/2011-10-27/how-hotels-can-leverage-ota-relationships-without-killing-their-pricing–strategy; http://www.sabrehospitality.com/blog/2011-11-30/three-top-trends-in-hopsitality-marketing-and-distribution-to-consider-when-planning-for-2012.

52.     Thus, pursuant to the Defendant Retailer-Hotel Agreements, both the Online Travel Retailer Defendants and the Hotel Defendants are enforcing the PM scheme against anyone who attempts to lawfully compete on price, including competing Online Travel Retailers. For example:

    a.     Defendant Hilton required Skoosh's wholesale supplier in the United States, AlliedTPro, to entirely cut off its contract with Skoosh as a result of Skoosh' s discounting and Defendant Hilton's enforcement of the Defendant Retailer-Hotel

Agreements. AlliedTPro wrote to Skoosh: "Trust me I would welcome the additional business but cannot risk our contracts with Hilton."

b.      Defendant Intercontinental wrote to Skoosh "demanding that Skoosh either raise[] its rates to the same as the hotels and its other distribution partners (a practice known in the industry as 'rate parity') or remove the hotels entirely from our site…"

c.      In 2003, Defendant Marriott announced "a sweeping overhaul of its transient pricing, bringing parity to all Marriott distribution channels -offline and online." During the Class Period, Marriott was among the Hotel Defendants threatening Skoosh.com with legal action and/or the withdrawal of their room reservations if Skoosh.com did not maintain rate parity.

d.      Defendant Starwood also enforces the PM scheme. "In one email to a hotel discounter, an executive at Starwood, which runs Le Meridien, Westin, and Sheraton hotels, said: 'Should a wholesaler decide to sell the rooms on a room only basis, he has to make sure that the per contract agreed minimum mark-up is guaranteed.' The employee said the 'violation' of Starwood's Best Rate Guarantee was 'really serious' and the breach was reported to the Brussels headquarters."

53.    Each of these actions was taken directly because of the conspiracy and the pressure the Online Travel Retailer Defendants were placing on Hotel Defendants to protect the Online Travel Retailer Defendants' margins by enforcing the PM scheme. The Hotel Defendants enforced the PM scheme because they feared losing access to the Online Travel Retailer Defendants' website to sell their rooms if they did not.

54.     Blink Booking, a mobile-only hotel booking service, echoed the claims of competing Online Travel Retailers, saying: "We've long believed that the big online travel agents have been guilty of denying consumers the best prices -and those hotels' hands are tied by price parity agreements. The online travel market may appear to offer plenty of choice and competition, but the reality is that there are lots of different shop windows selling the same rooms at the same prices -with those prices agreed through parity deals between the big groups and the big OTAs [online travel agents]."

55.     Thus, the Online Travel Retailer Defendants sought and received agreements from the Hotel Defendants that they would only sell to Online Travel Retailers who would not discount the Rack Rate for room reservations, even if and when it reduced the Hotel Defendants' sales and/or profits by slowing sales of the room reservations.

56.     The U.K. Office of Fair Trading (O.F.T.) issued a Statement of Objections against Booking.com (subsidiary of the U.S. company Priceline), Expedia and the Intercontinental Hotel Group (I.H.G.). Expedia has applied for immunity.

57.     From a consumer's perspective, Hotel chains and Online Travel Agencies are colluding and agreeing to sell rooms at exactly the same price and they are all, in turn, guaranteeing to the consumer that the best price is available on their own sites. What they're not saying is that the confidence of their guarantee stems from the fact that they have agreed to sell at the same rate and that they have colluded and continue to engage in a massive conspiracy, which includes intimidating any companies openly discounting and withdrawing supply from them.

58.     The Defendant Online Travel Companies have set up armies of monitors and automated software systems to monitor and enforce the illegal conspiracy.

59.     Defendants cannot deny that the Hotel Defendants agreed to work with the Online Travel Retailer Defendants to implement and enforce the PM scheme to ensure that competitive pricing by competing Online Travel Retailers or any other parties be restrained and prevented.

60.     The Agreement between and the Hotel Defendants to impose and enforce "rate parity" -*i.e.,* restraint on price competition, benefits the Online Travel Retailer Defendants' and does not have any legitimate pro-competitive reason.

61.     The PM Scheme has achieved its illegal goal: Online Travel Retailer Defendants do not compete on the basis of price for room reservations. Rather, all online sales of room reservations for the same rooms are at the Rack Rate and based upon fixed and agreed upon Rack Rate Structure.

62.     In fact, a federal court in the Western District of Texas recently commented on the similarity of the business models and pricing structures of the Online Travel Retailer Defendants:

> After reviewing the record, it is clear that the Defendants not only engage in a common course of conduct, but that many of their business practices are virtually identical. These practices include but are not limited to the manner in which they contract with the Hotel Defendants, the manner in which they determine and assess cancellation policies and fees, the manner in which they determine the mark up and fees to arrive at an acceptable margin and retail/sell rate; and, the manner in which they calculate, assess and pay hotel occupancy taxes. The deposition testimony of the corporate representatives, standing alone, reflects an amazing similarity in practice, procedure and corporate methodology among all of the [Online Travel Retailer Defendants].

> Memorandum and Opinion on Class Certification, *City o/San Antonio v. Hotels.com, et al.,* No. SA-06-CA-381-0G (W.D. Tex) (the "San Antonio Class Cert Order") at 18-19 (emphasis added).

63.     Tim Gordon, Senior Vice President, of Priceline has testified under oath in a deposition to the undisputed fact that each of the Online Travel Retailer Defendants buys the rooms and sells the rooms to the public at exactly the same price.

64.     The court determined, based upon deposition testimony, that the margins of each

of the Online Travel Retailer Defendants were identical to the other Online Travel Retailer

Defendants:

> Almost without exception, the net rate and sell rate for a given room on a given
> day are the same among the [Online Travel Retailer Defendants] because the
> Defendants' agreements with the Hotel Defendants all contain "parity" or "Most
> Favored Nation" clauses. This also makes the [ITe] margins the same.

*Id*. at 20, n21.

65.     An industry expert reports that Hotel Defendants seeking to promote price discounts in

order to have consumers buy directly from the hotel were met with the Online Travel Retailer

Defendants demanding that price competition cease. According to the industry source, "Hilton,

for example, is promoting like crazy to get the customer to book direct. 'Book with us and get

500 extra points or free Internet.'" But this competition was unacceptable to the Online Travel

Retailer Defendants and contrary to the PM scheme. "That's where the [Online Travel Retailer

Defendants] were forced to become big proponents of rate parity." So the Online Travel Retailer

Defendants ensured that the Hotel Defendants could not "undercut," *i.e., price compete,* by

entering into Defendant Retailer-Hotel Agreements. Accordingly, it is patently obvious that the

existing rate parity is the product of the PM scheme.

66.     As a result of the "success" of the PM scheme, the Online Travel Retailer

Defendants are confident that all of the prices listed between them for the same room will be

identical. Thus, they each offer a near identical "best price" guarantee -knowing it is the *only*

price available even among competitors. Examples confirm this fact.

Hotels.com "Price Match Guarantee"

> "The hotels.com Price Match Guarantee protects your pocket book
> and takes the worry out of booking a hotel room. After you book with hotels.com,

if you find a lower publicly available rate online for the same dates, hotel, and room category, we will match the price and refund you the difference.

And unlike some of our competitors, we will match the price right up to the time of the property's cancellation deadline, whether that is three days after you made the reservation or three months. So stop worrying and start booking."

<u>Expedia.com "Best Price Guarantee"</u>

We're so confident you'll find the best price for your trip here on Expedia that we guarantee it. Find a cheaper trip within 24 hours of booking and we'll refund the difference-and give you a travel coupon worth $50.

Expedia's Best Price Guarantee covers virtually every part of your trip: flights, hotels, vacation packages, cruises, rental cars, and activities. Here's how to tell if your Expedia reservation qualifies:

- Are travel dates the same?
- Is the hotel, room type and rate plan and cancellation policy the same?
- Is the airline, class, fare and cancellation policy the same?
- Is the car class and cancellation policy the same?
- Is the cruise line, cabin, class, fare, and cancellation policy the same?
- Does each part of your package match?
- Is the other fare from a U.S.-based website and quoted in dollars?

<u>Travelocity.com "Best Price Guarantee"</u>

"We guarantee the best price. If you find a lower price online, we won't just match it, we'll also give you $50 off your next trip."

<u>Orbitz.com</u>

"  You book a flight or hotel

Book a flight or prepaid hotel room on Orbitz and we immediately start tracking to see if another customer books the same itinerary at a lower price.

 They book it for less

If another Orbitz customer books your same itinerary for less, we'll issue credits -- or Orbucks -- for 110% of the difference. Amounts range from $5 to $250 per airline ticket or $5 to $500 per hotel booking.

You get hotel credit, automatically

No need to call, email or fill out forms. We'll deposit Orbucks into your "My Account," which you can redeem about three days after your qualifying trip is complete. "

67.    Absent the PM scheme, the Online Travel Retailer Defendants could not offer the best price guarantees *unless* they engaged in price competition and discounted the Rack Rates. This rate parity is evidenced by examples of hotel rooms available for reservation on the Online Travel Retailer Defendants' internet sites. These examples were searched on August 24, 2012 for a hotel room checking October 6, 2012 and checking out October 7, 2012.

### Holiday Inn Dallas Market Center

| | |
|---|---|
| Orbitz.com | $90 |
| Expedia.com | $90 |
| Travelocity.com | $90 |
| Priceline.com | $90 |
| HolidayInn.com | $90 |

### InterContinental DALLAS

| | |
|---|---|
| Orbitz.com | $135 |
| Expedia.com | $135 |
| Travelocity.com | $135 |
| Priceline.com | $135 |

| InterContinental Hotels & Resorts Main Website | $135 |
|---|---|

### Courtyard by Marriott Addison/Quorum Drive

| Orbitz.com | $59 |
|---|---|
| Expedia.com | $59 |
| Travelocity.com | $59 |
| Priceline.com | $59 |
| Marriott.com | $59 |

### Holiday Inn Houston-Hobby Airport

| Orbitz.com | $69 |
|---|---|
| Expedia.com | $69 |
| Travelocity.com | $69 |
| Priceline.com | $69 |
| HolidayInn.com | $69 |

### Houston Marriot in the Texas Medical Center

| Orbitz.com | $139 |
|---|---|
| Expedia.com | $139 |
| Travelocity.com | $139 |
| Priceline.com | $139 |

| Marriott.com | $139 |
|---|---|

### Courtyard by Marriott Fort Worth Downtown Blackstone

| Orbitz.com | $229 |
|---|---|
| Expedia.com | $229 |
| Travelocity.com | $229 |
| Priceline.com | $229 |
| Booking.com | $229 |
| Marriott.com | $229 |

### Hilton Downtown Fort Worth

| Expedia.com | $177 |
|---|---|
| Travelocity.com | $177 |
| Priceline.com | $177 |
| Booking.com | $177 |
| Hilton.com | $177 |

### Holiday Inn Fort Worth North

| Orbitz.com | $90 |
|---|---|
| Expedia.com | $90 |
| Travelocity.com | $90 |
| Priceline.com | $90 |

| Booking.com | $90 |
| HolidayInn.com | $90 |

68.     The Defendants' PM Agreements, and the scheme in restraint of trade, have harmed competition in the relevant market(s) and caused prices to be higher in the relevant market(s) than the prices would have been without the Agreements.

69.     In addition, the uniform adoption and enforcement of "rate parity" and most favored nation clauses by the Online Travel Retailer Defendants is a horizontal *per se* price fixing agreement.

70.     The Agreements were specifically intended to protect the Defendants from price competition -both from Hotel Defendants and other highly efficient retailers -offering the same inventory. Thus, Defendants agreed to restrain competition by mandating higher price levels and thereby preventing the competition or by eliminating the price cutting entirely. This scheme achieved its goals, and thereby substantially inflated prices to consumers like Plaintiff and Class members.

71.     The Defendants' price-fixing conspiracy is also prevalent elsewhere. The British Office of Fair Trade ("OFT") recently issued a "Statement of Objections" alleging that Expedia, Inc. infringed competition through the very same price fixing agreements with respect to British hotel rooms. The *Telegraph* reported that Expedia admitted that "it has engaged in cartel conduct in breach of the law," and is "providing information on its rivals under a 'leniency deal'" with the British authorities.

72.     In sum, the Defendants are engaged in an anti-competitive scheme under which the Online Travel Retailer Defendants have utilized their substantial market power and

dominance to induce the Hotel Defendants into agreeing to do one or more of the following: (a) impose minimum resale price maintenance agreements on competing Online Travel Retailers and all other parties who attempt to compete; (b) enforce the price maintenance agreements as to the Online Travel Retailers; and/or (c) cut off supply to price-cutting Online Travel Retailers.

73.     The relevant product market in this case is direct online travel retail sales of room reservations.

74.     The relevant geographic market in this case is the United States and/or the State of Texas.

75.     The Defendants have exercised their monopoly power to control prices and exclude competition in the relevant market(s). The Online Travel Retailer Defendants at all times relevant hereto, have possessed monopoly power in the relevant market(s). The Online Travel Retailer Defendants and their subsidiaries hold over a 50 percent market share in the internet travel business market. Moreover the Online Travel Retailer Defendants possess a dominant share of the market(s) for online retail sales of room reservations.

## ANTITRUST INJURY TO PLAINTIFF AND THE CLASS

76.     In formulating and effectuating their conspiracy, Defendants and their co-conspirators have engaged in anticompetitive practices, the purpose and effect of which was and continues to be to set, artificially fix and/or maintain the prices charged to Plaintiff and Class members. The overall effect of Defendants' anti-competitive scheme has been to substantially prevent competition from lower-priced room reservations. Absent the Defendants' exclusionary conduct, barriers to entry to the market would have been lower, which: (a) would have made it easier for existing or new competitors to enter or expand their positions in the market for room reservations, and (b) would have caused existing or potential competitors to be attracted to the

room reservation market because of the supracompetitive prices that the Defendants were charging.

77.     The presence of unfettered competition from actual or potential competitors, which were selling lower-priced room reservations, would have forced the Defendants to lower the prices for their room reservations in order to remain competitive and/or to counter a perceived threat of additional entry.

78.     During the relevant period, Plaintiff and the other members of the Class purchased room reservations directly from the Defendants. As a result of the Defendants' alleged illegal conduct, members of the Class were compelled to pay, and did pay, artificially inflated prices for the room reservations they purchased. Plaintiff would have been able to, *inter alia,* purchase less-expensive room reservations had potential competitors been able to engage in unfettered competition. The prices that Plaintiff and the other Class members paid for room reservations during the Class Period were substantially greater than the prices that Plaintiff and the Class members would have paid absent the illegal conduct alleged herein because: (1) the prices of all room reservations were artificially inflated by the Defendants' illegal conduct; and (2) Class members were deprived of the opportunity to purchase room reservations from the Defendants or their competitors at substantially lower prices. Thus, Plaintiff and the Class have, as a consequence, sustained substantial damages in the form of substantial overcharges.

## CLASS ALLEGATIONS

79.     Pursuant to Rule 23 of the Federal Rules Of Civil Procedure, Plaintiff brings this class action on behalf of themselves and all members of the following class (the "Class"):

> All persons and entities throughout the United States who, from January 1, 2005 through the present date (the "Class Period"), paid for a room at a Defendant Hotel reserved through the Online Travel Retailer Defendants. Excluded from the class are persons and entities who purchased a packaged services deal.

80.    Plaintiff believes that the Class includes thousands of consumers and businesses across the United States, though the exact number and the identities of the Class members are currently unknown.

81.    The members of the Class are so numerous that joinder of all Class members are impracticable.

82.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Nearly all factual, legal, and statutory relief issues raised in this Complaint are common to each of the members of the Class and will apply uniformly to every member of the Class. Among the questions of law and fact common to the Class are:

a.    whether Defendants engaged in agreements, contracts, combinations, and conspiracies, which had the purpose and/or effect of unreasonably restraining competition and limiting purchaser access to competing and lower-priced room reservations;

b.    whether Defendants unreasonably restrained trade;

c.    whether Defendants' anti-competitive contracts, combinations, and conspiracies have caused Plaintiff and the other members of the Class to suffer antitrust injury in the nature of overcharges;

d.    whether Defendants' unlawful conduct caused Plaintiff and other Class members to pay more for the room reservations than they otherwise would have paid;

e.    the appropriate Class-wide measure of damages;

f.    whether, and in what amount, Plaintiff and the other Class members are entitled to recover treble damages, court costs, and attorneys' fees;

g.      whether Defendants' anti-competitive conduct is continuing, thus entitling the Class to injunctive relief to promote unrestrained trade and free and fair competition.

h.      whether the Defendants' conduct violated the relevant federal antitrust laws;

i.      whether Defendants undertook actions to conceal their unlawful conspiracy.

j.      whether Defendants actions violated State laws as set forth in Counts II and III.

83.     Plaintiff's claims are typical of the claims of other members of the Class because Plaintiff, and every member of the Class, has suffered similar injuries as a result of the same practices alleged herein. Plaintiff has no interest adverse to the interests of the other members of the Class.

84.     Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained able counsel with extensive experience in class action litigation. The interests of Plaintiff are coincident with, and not antagonistic to, the interests of the other Class.

85.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

86.     Plaintiff and other members of the Class have suffered damages as a result of Defendants' unlawful and wrongful conduct. Absent a class action, Defendants will retain substantial funds received as a result of their wrongdoing, and such unlawful and improper conduct shall, in large measure, go unremedied. Absent a class action, the members of the Class will not be able to effectively litigate these claims and will suffer further losses, as Defendants

will be allowed to continue such conduct with impunity and retain the proceeds of its ill-gotten gains. Defendants must disgorge all ill-gotten gains.

87.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. Moreover, because the damages suffered by individual members of the Class are relatively small, the expense and burden of individual litigation make it impossible for members of the Classes to individually redress the wrongs done to them. The Class is readily definable, and prosecution of this action as a class action will eliminate the possibility of repetitious litigation. There will be no difficulty in the management of this action as a class action.

## TOLLING OF THE STATUTE OF LIMITATIONS, FRAUDULENT CONCEALMENT, <u>EQUITABLE TOLLING AND CONTINUING VIOLATIONS</u>

88.     Plaintiff repeats and reallege each of the foregoing allegations in paragraphs 1 through 87 as if set forth fully herein.

89.     Plaintiff did not discover and could not have discovered through the exercise of reasonable diligence the existence of the claims sued upon herein until immediately prior to commencing this civil action.

90.     Any applicable statutes of limitation have been tolled by Defendants' affirmative acts of fraudulent concealment and continuing misrepresentations, as the facts alleged above reveal.

91.     Because of the self-concealing nature of Defendant" actions and their affirmative· acts of concealment, Plaintiff and the Class assert the tolling of any applicable statutes of limitations affecting the claims raised herein.

92.     Defendants continue to engage in the deceptive practices. Class members are injured on a daily basis by Defendants' unlawful conduct. Therefore, Plaintiff and the Class

submit that each instance that Defendants engaged in the conduct complained of herein and each instance that a member of the Class purchased a room reservation constitutes part of a continuing violation and operates to toll the statutes of limitation in this action.

93.     Defendants are estopped from relying on any statute of limitations defense because of their unfair or deceptive conduct.

94.     Defendants' conduct was and is, by its nature, self-concealing. Still, Defendants, through a series of affirmative acts or omissions, suppressed the dissemination of truthful information regarding their illegal conduct, and have actively foreclosed Plaintiff and the Class from learning of their illegal, anti-competitive, unfair and/or deceptive acts.

95.     By reason of the foregoing, the claims of Plaintiff and the Class are timely under any applicable statute of limitations, pursuant to the discovery rule, the equitable tolling doctrine, and fraudulent concealment.

## CAUSES OF ACTION

## COUNT I

### VIOLATION OF SECTION 1 OF THE SHERMAN ACT AND SECTION 4 OF THE CLAYTON ACT (ALL DEFENDANTS)

96.     Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 through 95 as if set forth fully herein.

97.     The Defendants' agreements, and their enforcement, constitute contracts, combinations and conspiracies that substantially, unreasonably, and unduly restrain trade in the relevant market(s), and harmed Plaintiff and the Class thereby.

98.     The agreements cover a sufficiently substantial percentage of relevant market(s) to harm competition.

99.     The Defendants are liable for the creation, maintenance, and enforcement of the agreements. The conspiracy consists of a continuing agreement, understanding and concerted action between and among Defendants and their co-conspirators to set, fix, maintain, and stabilize prices, and to refrain from competing with each other. Such an agreement was in and of itself an unreasonable restraint of trade in interstate and foreign commerce and a per se violation of the federal antitrust laws.

100.    The Defendants possess market power.

101.    The agreements harm competition by artificially raising and stabilizing prices.

102.    There is no legitimate, pro-competitive business justification for the agreements or any of them that outweighs their harmful effect.

103.    Plaintiff and members of the Class were injured in their business or property by the collusion and conspiracy alleged above which facilitated, enabled, assisted or furthered Defendants' substantial prevention of competition in the relevant market(s).

104.    Without limiting the generality of the foregoing, Plaintiff and the other members of the Class have been forced to pay higher prices for room reservations than they would have paid in the absence of Defendants' unlawful conduct.

## COUNT II

### VIOLATION OF STATE ANTITRUST AND RESTRAINT OF TRADE LAWS
### (ALL DEFENDANTS)

105.    Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 through 104 as if set forth fully herein.

106.    The agreements discussed herein, and their enforcement, constitute contracts, combinations and conspiracies that substantially, unreasonably, and unduly retrain trade in the relevant market(s), and harmed Plaintiff and the Class thereby.

107.    The agreements discussed herein cover a sufficiently substantial percentage of relevant market(s) to harm competition.

108.    The Defendants possess market power.

109.    By reason of the foregoing, Defendants have violated Arizona Revised Statutes §§ 44-1401, *et seq.*

110.    By reason of the foregoing, Defendants have violated California Business and Professions Code §§ 16720, *et seq.*

111.    By reason of the foregoing, Defendants have violated District of Columbia Code Annotated §§ 28-4501, *et seq.*

112.    By reason of the foregoing, Defendants have violated Florida Deceptive and Unfair Trade Practices Act, §§ 501.201, *et seq.*, Fla. Stat.

113.    By reason of the foregoing, Defendants have violated Illinois Antitrust Act, Illinois Compiled Statutes, §§ 740 Ill. Comp. Stat. 10/1, *et seq.*

114.    By reason of the foregoing, Defendants have violated Iowa Code §§ 553.1, *et seq.*

115.    By reason of the foregoing, Defendants have violated Kansas Statutes Annotated §§ 50-101, *et seq.*

116.    By reason of the foregoing, Defendants have violated Main Revised Statutes 10 M.R.S. §§ 1101, *et seq.*

117.    By reason of the foregoing, Defendants have violated Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

118.    By reason of the foregoing, Defendants have violated Minnesota Annotated Statutes §§ 325D.49, *et seq.*

119.   By reason of the foregoing, Defendants have violated Mississippi Code Annotated §§ 75-21-1, *et seq.*

120.   By reason of the foregoing, Defendants have violated Nebraska Revised Statutes §§ 59-801, *et seq.*

121.   By reason of the foregoing, Defendants have violated Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

122.   By reason of the foregoing, Defendants have violated New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

123.   By reason of the foregoing, Defendants have violated New Hampshire Revised Statutes §§ 356:1, *et seq.*

124.   By reason of the foregoing, Defendants have violated New York General Business Laws §§ 340, *et seq.*

125.   By reason of the foregoing, Defendants have violated North Carolina General Statutes §§ 75-1, *et seq.*

126.   By reason of the foregoing, Defendants have violated North Dakota Century Code §§ 51-08.1-01, *et seq.*

127.   By reason of the foregoing, Defendants have violated Oregon Revised Statutes §§ 646.705, *et seq.*

128.   By reason of the foregoing, Defendants have violated South Carolina's Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*

129.   By reason of the foregoing, Defendants have violated South Dakota Codified Laws §§ 37-1-3.1, *et seq.*

130.    By reason of the foregoing, Defendants have violated Tennessee Code Annotated §§ 47-25-101, *et seq.*

131.    By reason of the foregoing, Defendants have violated Utah Code Annotated §§ 76-10-911, *et seq.*

132.    By reason of the foregoing, Defendants have violated Vermont Stat. Ann. 9 §§ 2451, *et seq.*

133.    By reason of the foregoing, Defendants have violated West Virginia Code §§ 47-18-1, *et seq.*

134.    By reason of the foregoing, Defendants have violated Wisconsin Statutes §§ 133.10, *et seq.*

**COUNT III**

**VIOLATION OF STATE CONSUMER PROTECTION LAWS
(ALL DEFENDANTS)**

135.    Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 through 134 as if set forth fully herein.

136.    Defendants have engaged in unfair and deceptive practices within the meaning of State consumer protection laws because Defendants' conduct is unlawful, misleading, and unfair as herein alleged.

137.    The practices are misleading because they were likely to deceive consumers into believing that they are obtaining the "best price" or a "low price" for their hotel room.

138.    Defendants' business practices, and each of them, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers, which harm greatly outweighs any benefit associated with

the business practice, in that consumers are led to believe that the rooms they were paying for had qualities that they did not.

139.    Plaintiff has standing to pursue this claim because they have been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein.  Plaintiff would not have purchased their hotel room or paid as much for it had they known the truth.

140.    Plaintiff and the Class are entitled to relief, including full restitution and/or restitutionary disgorgement, to the greatest extent permitted by law, which may have been obtained by Defendants as a result of such business acts or practices, and enjoining Defendants to cease and desist from engaging in the practices described herein.

**COUNT IV**

**UNJUST ENRICHMENT**
**(ALL DEFENDANTS)**

141.    Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 through 140 as if set forth fully herein.

142.    To the detriment of Plaintiff and the Class members, Defendants have been and continue to be unjustly enriched as a result of the unlawful and/or wrongful conduct alleged herein.  Defendants have unjustly benefited by receiving higher prices for Online Reservations than would have been possible absent the unlawful and/or wrongful conduct.  Between the parties, it would be unjust for Defendants to retain the benefits attained by their actions.

143.    By reason of the foregoing, Defendants have violated common law of unjust enrichment of each state.

144. Accordingly, Plaintiff and Class members seek full restitution of Defendants' enrichment, benefits and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff and the Class request judgment against the Defendants as follows:

A. For an Order certifying this case as a class action against Defendants and appointing Plaintiff as representative of the Class;

B. For money damages in favor of Plaintiff in an amount determined by the jury;

C. For permanent injunctive relief against Defendants to prevent further violations of the law;

D. For attorneys' fees, costs and interest as allowed by law; and

E. For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and the Class request a jury trial for any and all Counts for which a trial by jury is permitted by law.


Dated: September 28, 2012

Respectfully submitted,

_/s/William B. Federman_
William B. Federman
**FEDERMAN & SHERWOOD**
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
 - and -
2926 Maple Avenue, Suite 200
Dallas, Texas 75201

_/s/Kenneth G. Gilman_
Kenneth G. Gilman
**GILMAN LAW LLP**
Beachway Professional Center Tower
3301 Bonita Beach Road, Suite 307
Bonita Springs, FL 34134
Telephone (239) 221-8301
Facsimile (239) 676-8224
kgilman@gilmanpastor.com

*Attorneys for Plaintiffs and Proposed Class*